UNITED STATES of America,
Appellant,

v.

Maurice A. WHEELER, Appellee.

No. 12483.

United States Court of Appeals
Third Circuit.

Argued April 18, 1958.

Decided June 24, 1958.

Rehearing Denied Aug. 8, 1958.

Thomas J. Shannon, Ass't. U. S. Atty., Pittsburgh, Pa. (D. Malcolm Anderson, U. S. Atty., Pittsburgh, Pa., on the brief), for appellant.

Alexander Cooper, Pittsburgh, Pa. (Robert M. Taylor, Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This case raises a number of weighty questions, the only one of which we will have to decide is whether there are sufficient reasons for sustaining the granting of a motion upon the second rehearing thereof by a second judge of a district court after a first judge of the same court had already twice denied it.

The defendant was indicted on September 9, 1954 for evading 1950 income taxes. On October 18, 1954 he filed motions to suppress certain of the evidence which he alleged had been acquired illegally by the government and to dismiss the indictment because its return had been based

on the presentation of that evidence to the grand jury.

The alleged illegality in the acquisition of the evidence was that defendant made his records available to investigating agents who were ostensibly conducting a routine examination when in fact the investigation was actually intended to obtain evidence for possible criminal prosecutions of others with whom defendant was suspected of being involved. At hearings on the motions December 9th and 10th, 1954 it developed that defendant had originally been suspected of having connections with some misfeasance by Internal Revenue Service employees. It is beyond question that attention first focused on defendant's tax returns because of this suspicion, so that when an audit was made it had the two-fold purpose of ascertaining whether the returns were correct and whether they would show involvement in the matter which was under special investigation. Evidence on the latter point seems to have been sought primarily for the purpose of constructing a case against other suspects rather than against Wheeler. In any event the investigating agent revealed only the first of the two purposes to the defendant when he first approached him for the purpose of gaining access to defendant's records.

In fact the investigation developed nothing on the point of involvement, but it did turn up evidence which the authorities apparently considered warranted indictment for income tax evasion. The investigation thus concluded with exactly what is a foreseeable result of any income tax return audit, should the audit develop evidence of fraud.

On these facts Judge Miller on August 17, 1955, denied the motion for suppression of the evidence and for dismissal of the indictment, without prejudice to defendant's right to object to the admission of the evidence at trial. On May 1, 1956, he entered an order denying defendant's petition for reargument and reconsideration of the motion. An appeal to this court was dismissed for want of jurisdiction.

On August 27, 1956, defendant's new counsel filed another petition for rehearing of the motion to suppress evidence. Hearing was held on the petition on November 26, 1956, and on January 4, 1957 before Judge Gourley. On February 21, 1957, an order was entered by Judge Miller assigning the disposition of the petition for rehearing to Judge Gourley *nunc pro tunc* September 21, 1956, with consent of Judge Gourley. It appears from the record that this was done that the matter might be speedily dispatched, as Judge Miller was involved in the trial of two lengthy cases and it would not be convenient for him to handle the petition.

On March 20, 1957, Judge Gourley granted the motion for suppression of the evidence. D.C., 149 F.Supp. 445. This order was not appealable. Carroll v. United States, 1957, 354 U.S. 394, 77 S.Ct. 1332, 1 L.Ed.2d 1442. On September 3, 1957, the government petitioned for rehearing on the motion. The matter was heard on September 6, 1957, and denied on that date by Judge Gourley who simultaneously entered an order dismissing the indictment for having been returned as a result of presentation to the grand jury of the evidence ruled to have been illegally acquired. The government appealed to this court. We therefore reach the question for decision.

In TCF Film Corp. v. Gourley, 3 Cir., 1957, 240 F.2d 711, 713 this court sitting en banc and speaking through Judge Maris reaffirmed for this circuit the rule " * * * that judges of co-ordinate jurisdiction sitting in the same court and in the same case should not overrule the decisions of each other." [1] The rule might be more fundamentally stated that judges should not, if possible, place themselves in a position whereby in rendering impartial judgment on a question they might be required to overrule the decision of a judge of the same court in the

1. See authorities cited in TCF Film Corp. v. Gourley, supra, footnotes 1 and 2, at page 713.

same case. Cf. Price v. Greenway, 3 Cir., 1948, 167 F.2d 196.

In deciding the TCF case we refused to follow Dictograph Products Co. v. Sonotone Corp., 2 Cir., 1956, 230 F.2d 131, any further than to recognize that the rule was not absolute and all-embracing and that there are exceptional circumstances which will permit one judge of a district court to overrule a decision by another judge of the same court in the same case. In other words there are occasional situations in which a judge cannot avoid placing himself in a position which may require him to reconsider a point already earlier decided in the same case by another judge of the same court. The TCF case in fact presented that very situation. The crux of the matter, then, is not whether a second judge on reconsideration of a question can or should overrule the first judge but whether he may properly entertain the reconsideration at all.

We thus have implicitly recognized that the rule is one regulating the exercise of discretion in acting rather than one denying power to act at all. Because the TCF case was a mandamus proceeding begun before entry of final judgment on the merits we decided only that the second judge had properly exercised discretion in reconsidering the case. We did not pass on whether the result he reached, which was also a matter of discretion, in permitting the amendment of the complaint was an abuse.

The exceptional circumstances which Judge Gourley found to justify his acting in this case were that Judge Miller was "unavailable" and had assigned the case to him " * * * because of its pressing urgency," and that " * * * none of the matters presented in the hearings held before * * * [Judge Gourley] were presented to or considered by * * * Judge Miller."

TCF Film Corp. v. Gourley, supra, involved a situation where the judge who had first denied a motion to amend and supplement the complaint was unavailable to consider the petition for rehearing by reason of the termination of his temporary assignment to the district in which the case was pending. We pointed out that other exceptional circumstances of unavailability of the first judge would be if he had died or resigned; it was obvious in these situations that if the petition for reconsideration were to be heard at all, it would have to be by another judge.

This case does not present a situation in which the first judge is unavailable in the sense that it amounts to an exceptional circumstance permitting a second judge to take the matter on rehearing with the inherent accompanying possibility of overruling the first judge. Judge Miller was not even temporarily disabled, but was active in the handling of certain other time-consuming and, no doubt, wearing litigation. The briefs indicate that he in fact sat with Judge Gourley for part of the hearing in this matter. That it was not immediately convenient for him to consider the renewed motion did not make him unavailable.

The more than three years that this case had been pending at the time Judge Gourley took it illustrates that the only "pressing urgency" involved was the commendable concern to speed the dispensation of justice by maintaining as nearly current dockets as possible. But that usually desirable policy must sometimes give way to weightier or more delicate elements in the dispensation of justice. Here the element of "orderly functioning of the judicial process"[2] supersedes that of speeding a case to conclusion.

As we have pointed out, the heart of the matter is whether a second judge may properly entertain the reconsideration at all. We have indicated that if the first judge is available the matter should again be presented to him. But it is not always possible at the outset to determine whether the identical matter is simply being

2. The phrase is Judge Maris' in TCF Film Corp. v. Gourley, supra, 240 F.2d at page 714.

presented over again for reconsideration, or whether more accurately the matter is being reopened and additional matter presented bearing on the same question of law once decided on what was so far available.[3] In that latter situation the question has not really been decided earlier and is posed for the first time; the second judge ought, therefore, be free to render a decision.

It is true that some different witnesses testified before Judge Gourley than were heard by Judge Miller, but from an attentive perusal of the transcripts we fail to perceive that the substance of their testimony bearing on the motions to suppress the evidence and dismiss the indictment was any different. Therefore, though it was a proper exercise of discretion to take the new testimony, the decision on what was substantially the same testimony was nothing more than a review of Judge Miller's earlier decision and was an abuse of discretion. Such a review would under the circumstances have been an abuse even had the result been the same as Judge Miller's though the error would, of course, then have been harmless. And it would still under the circumstances have been an abuse of discretion even had the results reached by each judge on the merits been the opposite.

In this last conclusion at least we apparently are at odds with the Second Circuit in Dictograph Products Co. v. Sonotone Corp., supra. But if the second judge has as much chance of being in error on the merits as has the first judge in considering the same question, we fail to see why the fortuity (if it can be called that) of the second judge being right in the eyes of an appellate court should affect the operation of the rule designed to prevent shopping about by the defeated party for a judge more favorably disposed to whom a petition for reconsideration may be presented.

We are driven to the conclusion that the result in the Dictograph Products case was conditioned by the appellate court's conviction that the second judge had been right in dismissing the complaint whereas the first judge had been wrong in not doing so. The case really presents an argument favoring allowance of appeals from the denial of interlocutory orders which if granted would end the litigation, rather than requiring the case to wind through trial to final judgment and then upon review to find that the interlocutory order was in error and that the trial had been unnecessary.

Jurisdiction to entertain this appeal has so far been assumed, but defendant-appellee has pending a motion to dismiss the appeal for want of jurisdiction under 18 U.S.C. § 3731[4] on the authority of United States v. Pack, 3 Cir., 1957, 247 F.2d 168, and United States v. Janitz, 3 Cir., 1947, 161 F.2d 19. The pertinent statute at the time Janitz was decided was 56 Stat. 271 (1942), 18 U.S.C. § 682 (1946).[5] The Pack opinion held, after

---

3. Permitting this latter situation to develop is again pretty much within the discretion of the judge to whom the matter is brought; such an exercise of discretion is largely untrammeled because the case is still malleable, not yet having gone to final judgment.

4. 18 U.S.C. § 3731 (1952):

"An appeal may be taken by and on behalf of the United States from the district courts to a court of appeals in all criminal cases, in the following instances:

"From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof except where a direct appeal to the Supreme

Court of the United States is provided by this section."

5. 56 Stat. 271 (1942), 18 U.S.C. § 682 (1946):

"An appeal may be taken by and on behalf of the United States from the district courts to a circuit court of appeals or the United States Court of Appeals for the District of Columbia, as the case may be, in all criminal cases, in the following instances, to wit:

"From a decision or judgment quashing, setting aside, or sustaining a demurrer or plea in abatement to any indictment or information, or any count thereof except where a direct appeal to the Supreme Court of the United States is provided by this Act."

an exhaustive review of the legislative history, that the difference in wording of the revised § 3731 had not been intended to work any change from the substantive meaning of § 682.

In both Pack and Janitz the trial courts had entered orders suppressing certain evidence without which as a practical matter the government found itself unable to conduct an effective prosecution; the trial courts in both instances, frankly seeking to provide review for their suppression orders and ostensibly acting under Rule 48(b), Fed.Rules of Criminal Procedure, 18 U.S.C., subsequently entered dismissals of the indictments. In Janitz, 161 F.2d at page 21, this court said:

> "We think it clear * * * that the learned Judge's order of dismissal was not based on any objection brought against the indictment at all. The defendants had made no attack on the indictment. The Government's case failed because it had no testimony to support it. We think this is not the kind of a judgment to which the Criminal Appeals statute is directed."

The Pack opinion determined that the revised statute called for the same result in that case.

■ What we have here, however, is an appeal on behalf of the United States from a quashing and setting aside of an indictment, thought by the dismissing judge to have been illegally obtained. The dismissal was entered explicitly under Rule 12(b) (2), Fed.Rules Crim.Procedure and not solely because of the government's failure or inability to prosecute. Nor was the dismissal, as appellees allege, simply a well-conceived device for putting before this court for review the interlocutory order suppressing the evidence. Consideration by us of whether an indictment is defective if obtained as a result of presentation to the grand jury of evidence unlawfully acquired by the government would not necessarily have also entailed consideration of the different question of whether the evidence involved was subject to a suppres-

sion order. And were we to consider both questions, reinstatement of the indictment would not necessarily compel a reversal of the suppression order. Jurisdiction for this appeal, therefore, is conferred by 18 U.S.C. § 3731.

The motion to dismiss the appeal is denied. The order of March 20, 1957 granting the defendant's motion to suppress evidence, and the order of September 6, 1957 granting the motion to dismiss the indictment are vacated and the cause is remanded for further proceedings consistent with his opinion.