Geoffrey L. STEIERT, Geoffrey L. Steiert, Esq., P.C.; Pensco Pension Services, Inc. FBO Geoffrey L. Steiert; Franklin & McKinley, Inc.; Network Communications, Inc. d/b/a Healing Touch; Plaintiffs,

v.

MATA SERVICES, INC.; KI Digital, Inc.; Charles & Margaret McCormick, H/W; William and Kathy Schroeder, H/W; Macrophage, Inc; KI Digital, LLC; Mata Services, LLC; Iridium Interstate, LLC; Film East, LLC; Screenworks, LLC; KI Management, LLC; Kevin A. McCormick; K.A.M. Enterprises, Inc.; Robert Stevens, Esq., as Receiver for Mata Services, Inc. and KI Digital, Inc.; John Doe 1; John Doe 2; C Corp. 1 and C Corp. 2, Defendants.

No. 98–CV–4992 (SSB).

United States District Court,
D. New Jersey.

Aug. 29, 2000.

Geoffrey L. Steiert, Voorhees, NJ, pro se.

Kevin M. Hart, Stark & Stark, a Professional Corp., Princeton, NJ, for Defendants, Mata Services, Inc., KI Digital, Inc. and KI Management, LLC.

William N. Levy, Levy and Levy P.A., Voorhees, NJ, for William Schroeder, Kathy Schroeder, Macrophage, Inc.

Charles McCormick, Gloucester County Correctional Facility, Woodbury, NJ, pro se.

1. The Defendants that initially joined in the instant motion include Kevin A. McCormick; Charles McCormick; K.A.M. Enterprises; Mata Services, Inc.; Ki Digital, Inc., Ki Digital, LLC; Mata Services LLC; Iridium Interstate; Film East, LLC; Screenworks, LLC; Ki Management, LLC; William Schroeder;

**OPINIONS ON DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) OR 12(b)(6)**

BROTMAN, District Judge.

Presently before this Court pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) is Defendants'[1] motion to dismiss the complaint of Plaintiffs Geoffrey L. Steiert (hereinafter "Steiert" or "Plaintiff"); Geoffrey L. Steiert, Esq., P.C.; Pensco Pension Services, Inc. FBO Geoffrey L. Steiert; Franklin & McKinley, Inc.; and Network Communications, Inc d/b/a/ Healing Touch (collectively "Plaintiffs").

## I. FACTUAL AND PROCEDURAL BACKGROUND

The instant suit arises out of a series of loans made by Plaintiff Geoffrey Steiert to Defendants Mata Services, Inc. and its affiliates. On or about November, 1996, Plaintiff was solicited by defendants William and Kathy Schroeder (collectively "Schroeders") and Macrophage to lend money to defendant Mata Services for the purpose of participating in the "factoring of commission paper" involved in the short-term bulk sale of upscale computer equipment. (*See* First Amended Compl. at ¶¶ 35–40. Predicated on the Schroeders' representations, Steiert invested $2,500 in Mata Services which was repaid by the end of March 1997). (*See id.* at ¶ 41)

Subsequently, Bill Schroeder informed Steiert that Mata Services was now seeking to continue its factoring loans, but without outside financing. (*See id.* at ¶¶ 42–56) Shortly thereafter, Mata Services announced a one-time opportunity to invest in a new business venture, which

and Kathy Schroeder. (*See* Docket at ¶¶ 76,-83,84 & 85) The Court notes that Defendants Kevin A. McCormick and K.A.M. Enterprises have been administratively terminated from the suit pursuant to Title 11, Section 362 of the Bankruptcy Act. (*See* Docket at ¶ 94)

would be a "division" of Mata Services called "Ki". ( *See id.* at ¶¶ 46–47).

By April of 1998, Steiert's loans to the company totaled approximately $500,000. (*See id.* at ¶ 56). The private stock offering was postponed and with each delay, Plaintiff's loans were renewed or "rolled over." (*See id.* ¶¶ 56–61) In May of 1998, Plaintiff requested the return of his loan proceeds, but was advised that Mata Services could not make any payments due to an ongoing Securities and Exchange Commission ("SEC") audit. (*See id.* at ¶¶ 58–61)

On or about June 19, 1998, the Attorney General of the State of New Jersey, individually and on behalf of the Chief of the Bureau of Securities, filed a civil enforcement action against Mata Services, Inc.; Ki Digital, Inc.; and Charles McCormick alleging violations of New Jersey's securities law. ( *See id.* at ¶ 62) On that same date, a Consent Order was entered into by Mata Services, Inc., Ki Digital, Inc., McCormick, and the State Bureau of Securities, which was signed by the Honorable Harry A. Margolis, P.J.Ch. The Order, among other things, appointed Robert Stevens, Esq. ("Stevens") as the Receiver for Mata Services and its related entities. (*See id.* at ¶ 63)

On November 4, 1998, Steiert filed the instant action, asserting that he was induced to make these loans by certain misrepresentations made by Defendant Mata Services, including the misrepresentation that: i) Mata Services was well-capitalized and had no debt; ii) Steiert's loans were secured; iii) Steiert's loans would be converted to stock upon approval by the SEC of Mata Services' stock offering; and iv) Mata Services had enough cash to repay the loans on demand at any time before the SEC approval of Mata Services' offering. In addition to violations of federal securities law, the Plaintiff sought recovery under New Jersey's securities law, New Jersey's Consumer Fraud Act, and various common law tort claims. (*See* First Amended Compl.)

Five months later, on April 8th 1999, Plaintiff filed an application in this Court for a temporary restraining order, preliminary injunction and expedited discovery. Magistrate Judge Robert B. Kugler denied the Plaintiff's application for a temporary restraining order. (*See* Opinion & Order dated April 20th 1999)(recounting denial of temporary restraining order) Judge Kugler further ordered the parties to appear before him on April 13th for a hearing on Plaintiff's preliminary injunction application. (*See id.*) After the April 13th hearing, an Opinion & Order was issued denying Plaintiff's application. (*See id.*) In it Judge Kugler rejected Defendant's argument that principles of abstention required the Court to refrain from exercising jurisdiction. (*See id.* at 24–27)

Shortly thereafter Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) and in response the Plaintiff filed a cross-motion to amend the complaint. In a July 12th Opinion and Order the Court granted Plaintiff leave to amend his complaint and Defendants' motion was denied in part and dismissed in part without prejudice.[2] On November 3rd 1999 the state court expanded Steven's authority, consistent with N.J.S.A. 49:3–69, by appointing him a permanent receiver. Six days later, on November 9th 1999, the Plaintiff amended the complaint in this action. (*See* First Amended Complaint) In response the Defendants filed the instant motion, arguing that the Younger and Colorado River abstention doctrines mandate that the Court refrain from exercising jurisdiction.

## II. DISCUSSION

Asserting that allowing Plaintiffs to pursue their federal suit could potentially deplete the allegedly limited pool of assets the state seeks to preserve for redistribution to investors, the Defendants argue

---

**2.** (*See* July 13th 1999 Opinion and Order)

that the Court should abstain from hearing this matter under the doctrine of either Younger or Colorado River. The Plaintiffs, however, contend that Judge Kugler's April 20th 2000 Opinion and Order rejected the applicability of these doctrines and therefore Defendants' motion should be denied based on the "law of the case" doctrine.

a) *Law of the Case*

■ Absent exceptional circumstances, the law of the case doctrine precludes a party from raising issues that the court has previously decided, either expressly or implicitly. *Africa v. City of Philadelphia,* 158 F.3d 711, 718 (3d Cir.1998). Arguing that Judge Kugler's opinion addressed only the applicability of Burford abstention, Defendants contend that the law of the case does not apply.

■ In the April 20th opinion, Judge Kugler acknowledged that "[a]t oral arguments, some of the defendants seemed to make the argument that the Court should abstain from exercising jurisdiction over this matter ... because of the pending state court receivership and action." (April 20th Opinion at 24) Rather than limit its analysis to Burford, as the Defendants contend, the court thereafter cited to the different types of abstention and the criterion necessary to invoke each one. (*See id.* at 25) Both Younger and Colorado River were mentioned within this paragraph. (*Id.*) Immediately after outlining the framework of each doctrine, the Court concluded that "[t]he defendants have failed to present the Court with any reasons why the Court should abstain from exercising jurisdiction over this matter." (*Id.*) Thus it is clear that Judge Kugler considered all the abstention doctrines and rejected their applicability.

The Court finds this determination further evidenced by the remainder of the opinion. In it the court identified the various abstention elements that were lacking in the present case. With respect to Younger, Judge Kugler observed that the "action in no way interferes with the state's ability to govern its own affairs. The state is free to proceed with its action against the defendants and the receiver is free to oversee the affairs of the Corporate Defendants notwithstanding Plaintiff's claims here." (*Id.* at 25–26) Although this element may also be considered a proper component of a Burford analysis, it clearly is relevant to Younger, which requires that the federal action must interfere with the state proceedings in order for abstention to apply. *See Gwynedd Properties, Inc. v. Lower Gwynedd Township,* 970 F.2d 1195, 1201 (3d Cir.1992). Thus Judge Kugler's conclusion that the federal action did not interfere with the state proceedings implicitly, if not expressly, determined that Younger abstention was inappropriate.

A likewise conclusion is reached as to Colorado River's applicability. The April 20th opinion discussed the principles underlying Colorado River, noting that it is invoked "to avoid duplicative litigation." (April 20th 1999 Opinion at 25) (quoting *Chiropractic America v. Lavecchia,* 180 F.3d 99, 103 (3d Cir.1999)). The opinion thereafter concluded that "while the state court action may be duplicative litigation, the Court is not convinced that the state is acting directly for the protection of the noteholders, such as Plaintiff." (*Id.* at 26) Examining this language, it is clear that Judge Kugler addressed the applicability of abstaining under the "duplicative litigation" theory espoused in Colorado River, but found it inapplicable because the receiver did not sufficiently represent the noteholders' interests. Thus the Court concludes that both abstention doctrines advocated by the Defendants were considered and rejected in Judge Kugler's April 20th 1999 opinion.

The inquiry, however, does not end there. There are exceptions to the "law of the case." The Third Circuit has recognized that the doctrine does not preclude reconsideration of previously decided issues in circumstances where: 1) new evidence is available; 2) a supervening new

law has been announced; or 3) the earlier decision was clearly erroneous and would create manifest injustice. *See Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 116–117 (3d Cir.1997).

Here the Defendants argue that recent factual developments preclude application of the law of the case. Specifically Defendants contend that, even if Judge Kugler's April 20th 2000 Opinion and Order addressed both Younger and Colorado River abstention doctrines, they are not bound by this decision because the expansion of the receiver's authority constitutes "new evidence" for purposes of law of the case. The Court agrees, finding that this recent development arguably effects the rights of the parties. Thus the law of the case does not preclude the Court from considering these issues. *See Hayman Cash Register Co. v. Sarokin,* 669 F.2d 162, 169–70 (3d Cir.1982)(explaining that "[w]hen new evidence is available, 'the question has not really been decided earlier and is posed for the first time' ")(quoting *United States v. Wheeler,* 256 F.2d 745, 748 (3d. Cir.1958)). Accordingly the Court will address the applicability of each of the abstention doctrines advocated by the Defendants.

b) *Younger Abstention*

■ Younger abstention arises from " 'a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances.' " *Gwynedd Properties, Inc.,* 970 F.2d at 1199–1200 (quoting *Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). As a result abstention under Younger is appropriate only where: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims. *Id.*

■ Here it is clear there are ongoing state proceedings that are judicial in nature. Neither party disputes the existence of the state action and resulting receivership over Ki Digital and its affiliates. Thus the first prong of Younger is met. The second prong, which requires that the state proceedings implicate an important state interest, presents a more difficult question.

In *Gwynedd Properties, Inc. v. Lower Gwynedd Township,* the Third Circuit explained that:

> [w]hile the second prong of [Younger] focuses on the state interests implicated by state as opposed to federal actions, abstention under Younger *presumes that the federal action would interfere with the ongoing state proceedings since, typically, the federal plaintiff's object in filing the federal action is either to seek an injunction against the state proceedings themselves or to challenge the law being applied in those proceedings.*

970 F.2d at 1200–01(emphasis added). In the instant matter, the federal action neither seeks to enjoin the state proceedings nor challenge the constitutionality of the law that is being applied. As Judge Kugler aptly observed in the April 20th opinion, "[t]he state is free to proceed with its action against the defendants and the receiver is free to oversee the affairs of the Corporate Defendants notwithstanding Plaintiff's claims here." (April 20th 2000 Opinion at 26) Thus it can not be argued that this action interferes with state proceeding in the "typical" manner contemplated by the Third Circuit in *Gwynedd Properties.*

However, Defendants contend that Plaintiffs' federal suit nonetheless satisfies Younger's second prong because it "will directly impact the assets that the State is currently trying to protect and this substantially interferes with the state proceedings and any potential scheme of redistribution." (Defs.' Br. at 17) Although the Court recognizes that a judgment against the Defendants could reduce the total assets entrusted to the receiver, nei-

ther liquidation nor a redistribution plan has been ordered. Ki Digital and its affiliates are currently operating, albeit under the watchful eye of the receiver, as a going concern. Additionally the Court finds it significant that unlike many other abstention cases involving state oversight of a previously private corporate entity,[3] the receiver has not taken an active role in support of Defendants' abstention argument. Thus it is unclear to what extent the Plaintiffs' suit, which represents a direct action[4] against the Defendants for various acts of fraud and misrepresentation, interferes with the receiver's ability to oversee Ki Digital and protect the interests of other noteholders. Although the Court concedes that the issue of whether the federal case infringes upon the state proceedings presents a difficult question, it need not ultimately resolve this issue because it concludes that Defendants have failed to satisfy Younger's third prong.

The third prong of Younger requires that the state proceedings afford an adequate opportunity to raise the federal claims. In the instant action, Plaintiffs' complaint includes claims arising under 15 U.S.C. § 78t(a) and Rule 10b–5 of the Securities Exchange Act, both of which fall under the exclusive jurisdiction of the federal courts. *See* 15 U.S.C. § 78aa. Because the exclusive federal nature of these claims prevents them from being asserted in the state court, the Plaintiffs are necessarily deprived of an "adequate opportunity to raise the federal claims," and Younger's third prong is not satisfied.

In *Riley v. Simmons*, 45 F.3d 764 (3rd Cir.1995), the Third Circuit addressed a similar issue. The plaintiffs in *Riley* brought a class action suit against the officers and directors of an insolvent insurance company. *See id.* at 769. The plaintiffs' complaint asserted claims for various violations of federal securities law, including a Rule 10b–5 claim, as well as causes of action grounded in New Jersey statutory and common law. *See id.* The defendants thereafter moved to dismiss, arguing that principles of Burford abstention warranted the dismissal of the claim. *See id.* at 769–70. The insurance commissioner, appointed as the company's rehabilitator, was granted permission to intervene for purposes of joining in the defendants' motion. *See id.* at 767, 770.

The district court found that Burford abstention was appropriate and the complaint was dismissed without prejudice. *See id.* at 770. The Third Circuit reversed, reasoning that the exclusive federal nature of the Rule 10b–5 claim "necessarily deprives New Jersey state courts of jurisdiction over that claim .... we will reverse the district court's decision to abstain on Burford principles because there is no possibility of 'timely and adequate state court review' of Plaintiffs' Rule 10b(5) claim[.]" Here, in addition to a

---

**3.** *See e.g., Riley v. Simmons*, 45 F.3d 764, 767–70 (3rd Cir.1995)(permitting state insurance commissioner, acting as rehabilitator, to intervene); *University of Maryland v. Peat Marwick Main & Co.*, 923 F.2d 265, 267 (3rd Cir.1991)(same).

**4.** In *University of Maryland v. Peat Marwick Main & Co.*, the Third circuit noted the distinction between direct suits and those that were merely derivative. 923 F.2d 265 (3rd Cir.1991). The plaintiffs in University of Maryland asserted tort claims grounded upon an auditor's alleged breach of its fiduciary duty resulting from the issue of a false and misleading certification. *See id.* at 268, 273. Focusing upon the fact that the claims asserted by the plaintiffs were direct, not derivative

actions, the *University of Maryland* court concluded that Burford abstention was inappropriate. *See id.* at 273–74. Addressing the impact of the direct action fraud claims upon the receiver's ability to oversee the company, the Third Circuit noted that "[t]he policyholders' claims ... do not interfere with the Commissioner's capacity to function as the receiver.... The Supreme Court has recently affirmed the principle that suits to establish the validity of a claim, even against the insolvent company itself ... do not interfere with the functions of a receiver." *Id.* at 274. Here the Plaintiffs seek recovery for misrepresentations made directly to Steiert by the company. Thus it is clear that the suit is direct.

Rule 10b–5 claim,[5] the Plaintiffs assert a claim for violation of 15 U.S.C. § 78t(a).[6] Because these claims may not be asserted in the state court, the state proceedings necessarily fail to provide the Plaintiffs with "an adequate opportunity to assert the federal claims."[7] As a result Younger abstention is inapplicable.[8]

#### c) *Colorado River Abstention*

■ Colorado River abstention applies in "certain extremely limited circumstances in which a federal court may defer to pending state court proceedings based on considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Ryan v. Johnson,* 115 F.3d 193, 195 (3rd Cir.1997)(quoting *Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). In order to invoke the doctrine, the Court must first determine that the state and federal actions are "parallel." *See id.* at 196. "Generally cases are parallel when they involve the same parties and claims." *Id.* "It is important to note, however, that only truly duplicative proceedings be avoided. When the claims, parties or requested relief differ, deference may not be appropriate."

*In re Bankers Trust Co.,* 636 F.2d 37, 40 (3rd Cir.1980).

Based on the parties submissions, the Court concludes that the proceedings are not "parallel." As an initial matter the Plaintiffs are not named as parties in the state action. Additionally a comparison of the state and federal complaints reveals that they pursue different claims and seek different types of relief. The state complaint is limited to the state's request for declaratory and injunctive relief (including a request for a permanent receiver) sought for statutory violations of New Jersey's securities law. (*See* Seconded Amended Verified Complaint, attached as Ex. 3 to Defs.' Reply Br.) Thus the state action fails to include the federal securities law and New Jersey common law theories of liability advanced in the federal suit, which unlike the state suit seeks punitive damages on Plaintiffs' behalf.[9] (*Compare id. with* First Amended Compl., dated Feb. 14th 2000) While the Defendants have submitted evidence that the receiver is seeking to compel the defendants to "disgorge all remuneration they received for their violative acts and to make restitution to innocent parties who have lost money as a result of those acts",[10] the complaint does not seek monetary relief on behalf of the noteholders.[11] (*See* Seconded Amended

5. (*See* Count XVI of First Amended Compl)

6. (*See* Count XIII of First Amended Compl.)

7. The Court is aware that *Riley* addressed Burford, not Younger, abstention. However the Court finds this a distinction without a difference in that the Third Circuit's reasoning for denying abstention in *Riley* was based on the defendant's failure to satisfy a requirement of Burford that is common to Younger, namely that the plaintiff have an adequate opportunity to assert the federal claims in the state forum.

8. The Defendants cite to *Williams v. Hepting,* 844 F.2d 138 (3rd Cir.1988) in support of their argument that the Court should dismiss the state claims and order a stay of the federal action. However *Williams* is clearly distinguishable from the instant case in that the *Williams* plaintiff's request for relief was grounded upon a direct attack on the validity of a pending state court criminal proceeding.

*Id.* at 143. As discussed *supra,* the instant litigation does not seek to enjoin a state proceeding or attack a state judgment, the typical grounds for Younger abstention. Thus the cases are clearly distinguishable. Additionally a dismissal or stay of the state claims involved in this case is inappropriate given the fact that the overwhelming majority of the New Jersey common law and statutory claims raised in the federal action are not being asserted in the state proceedings. *See* Section II(c), *infra.*

9. The federal suit also seeks recovery under New Jersey's Consumer Fraud Act. (*See* First Amended Compl., dated Feb. 14th 2000)

10. (*See* Plaintiff's Pretrial Memorandum, attached to Defs.' Ex.2)

11. Although the state complaint states that in the event the receiver determines that liquidation is appropriate the attorney general

Verified Complaint, attached as Ex. 3 to Defs.' Reply Br.) Moreover the exclusive federal nature of Plaintiffs' Rule 10b–5 and 15 U.S.C. § 78t(a) claims lends strong force to the Court's conclusion that the proceedings are not truly parallel. *See University of Maryland*, 923 F.2d at 276 n. 16 (explaining that "[i]f the [plaintiffs] claims are not subject to review in a state forum, there can be no 'parallel' state court litigation on the basis of which a court could exercise Colorado River abstention"); *see also Kaehly v. City of Pittsburgh*, No. Civ. A. 96–832, 1997 WL 306883, at *6 (March 3, 1997)(finding actions were not truly duplicative and Colorado River did not apply since, *inter alia*, "plaintiffs' antitrust claim could not have been raised in state court because federal district courts have exclusive jurisdiction over such claims").

Because the claims asserted and the relief requested in the separate suits differ markedly, and because this action includes exclusively federal claims, the Court concludes that the proceedings are not parallel and Colorado River abstention is inappropriate. Accordingly the Defendants' motion to dismiss is denied.

## III  CONCLUSION

For the above stated reasons, the Defendants motion for summary judgment is denied.

The Court will enter an appropriate order.

seeks to disperse monies "to all persons to whom any securities of Mata and Ki Digital ... were sold," to date the receiver has elected to continue the entities as a going concern. (*See* Second Amended Verified Compl. at ¶ 40(c)) Therefore, as long as the Defendant entities remain solvent, the complaint can not be read to seek monetary damages on the noteholders' behalf.

1. The defendants that initially joined in the instant motion include Kevin S. McCormick;

## ORDER ON DEFENDANT'S MOTIONS TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) OR 12(b)(6)

**THIS MATTER** having come before this court on the Defendant's[1] motion to dismiss the complaint of Plaintiffs Geoffrey L. Steiert; Geoffrey L. Steiert, Esq., P.C.; pensco Pension Services, Inc. FBO Geoffrey L. Steiert; Franklin & McKinley, Inc.; and Network Communications, Inc. d/b/a Healing Touch (collectively "Plaintiffs") and

The court having reviewed the record and the submissions of the parties; and

For the reasons set forth in the Court's opinion of this date:

**IT IS** this 28th day of August, 2000 **HEREBY**

**ORDERED** that the Defendants motion to dismiss the Plaintiff's complaint is **HEREBY DENIED.**

Charles McCormick; K.A.M. Enterprises; Mata Services, Inc.; Ki Digital, Inc., Ki Digital, LLC, Mata Services LLC, Iridium Interstate; Film East, LLC, Screenworks, LLC; Ki Management, LLC; William Schroeder; and Kathy Schroeder. (*See* Docket at ¶¶76,83,84 & 85) The Court notes that Defendants' Kevin A. McCormick and K.A.M. Enterprises have been administratively terminated from the suit pursuant to Title 11, Section 362 of the Bankruptcy Act. (*See* Docket at ¶94)